GAIDRY, J.
|2A former employee of a bank appeals a summary judgment dismissing her claims for damages against her former employer and her former supervisor for defamation, intentional infliction of emotional distress, negligent misrepresentation, and other al *28 leged wrongful acts. For the following reasons, we affirm the summary judgment.
FACTUAL AND PROCEDURAL BACKGROUND
The plaintiff, Jacqueline Cook, was employed as assistant branch manager at the Port Allen, Louisiana branch of American Gateway Bank (the bank). Prior to her promotion to that position on June 13, 2005, she was the branch’s vault teller. Her supervisor was Glen Daigle, the bank’s branch manager. Although her new job duties did not include operating the main vault and maintaining its contents, plaintiff continued to perform the vault teller’s duties while the new vault teller, Elaine Canezaro, was on extended family leave and for a period of time after her return to work. The duties of the vault teller included preparation of shipments of currency to the Federal Reserve Bank.
While acting as vault teller, plaintiff prepared a shipment of $72,000.00 in currency for delivery by courier to the Federal Reserve Bank on June 21, 2005. On June 22, 2005, the shipment was returned by courier from the Federal Reserve Bank for noncompliance with its packaging and labeling rules. By that time, Ms. Canezaro had returned to her duties as vault teller. As she had not prepared the shipment, she declined to sign the receipt accepting delivery, and plaintiff signed for the shipment and placed the money in her coin vault of her teller drawer pending its reprocessing for shipment.
|sOn June 28, 2005, or about a week after the shipment of currency had been returned to the bank, Ms. Canezaro happened to mention that fact and the reason for the return to Jacqueline Smith, the bank’s district manager, who was working at the branch office that day. The same day, two other employees advised Ms. Smith that a “ticket” or accounting entry for the returned $72,000.00 shipment had not been received for entry in the branch’s general ledger. Ms. Smith and Mr. Daigle then went to the main vault to audit the returned shipment, but were informed by Ms. Canezaro that the money had been placed by plaintiff in her coin vault. As plaintiff had left early that day, it was necessary for Ms. Smith and Mr. Daigle to retrieve a duplicate set of keys from a lock box in the main vault to open plaintiffs coin vault.
The returned shipment was found in plaintiffs coin vault The shipment was contained in four sealed clear bags, permitting counting of the banded packages of currency without opening the bags. One bag still bore the original shipment date, two bore the following week’s scheduled date of shipment, and one had no date. The latter bag contained ten-dollar bills. Ten-dollar bills were banded for shipment to the Federal Reserve Bank in packets or “s traps” of 100 bills, with ten “s traps” making up one “brick.” Half of a ten-strap “brick” was missing from that bag, a fact obvious from a simple visual inspection and comparison with another complete “brick.” The total amount of missing currency was $5,000.00.
Upon discovering that $5,000.00 was missing from the returned $72,000.00 shipment, Ms. Smith and Mr. Daigle instituted a search for the missing funds, beginning with plaintiffs teller drawer. Upon opening the teller drawer, they observed a five-strap half-“brick” of ten-dollar bills, resembling the other in the coin vault and bearing the original shipment |4delivery date stamped on it. They originally believed that the missing $5,000.00 had been found, but upon auditing the balance of plaintiffs teller drawer, they discovered *29 that the total amount of money balanced with the recorded balance.[1]
The bank had written “Cash Procedures” that included a “teller drawer maximum cash limit” policy, under which the maximum amount of cash that any employee employed over six months could keep in a teller drawer was $27,000.00 or $28,000.00. The following day, Ms. Smith and Mr. Daigle met with plaintiff and discussed the situation. They again audited her teller drawer in her presence, with the same result. They also advised her that the returned shipment in her drawer’s coin vault was short $5,000.00, but plaintiff denied any knowledge of its whereabouts. Ms. Smith also confronted plaintiff about keeping more money in her coin vault than was permitted by the “teller drawer maximum cash limit” policy, as well as plaintiffs failure to prepare general ledger entries or tickets for the returned $72,000.00.
Plaintiff was then advised to turn in her bank keys and to go home, and that she would be advised of the outcome of the investigation. Ms. Smith and another bank employee then opened each bag of the returned shipment and again counted the money. They also conducted a thorough search of , the branch premises, but did not find the missing funds.
According to Mr. Daigle, plaintiff left a “threatening” telephone message for him the following morning, to the effect that “by the time she was finished with [him][he] would not have a job.” The bank had a detailed written “Teller Cash Outage Policy” setting out the procedures to be | .^followed, including employee disciplinary action, for various levels of cash shortages or losses (“outages”). For outages of $400.00 or more, the management had the discretion to impose discipline “up to and including termination.” Mr. Ricky Sparks, the bank’s chief administrative officer, later made the decision to terminate plaintiffs employment for violation of the written outage policy. Plaintiff was advised either that day or the next day that her employment was terminated.
The bank’s management also adhered to an unwritten internal management policy requiring that an unexplained outage of approximately $1,500.00 or more be reported to law enforcement authorities for appropriate investigation. The loss was thereupon reported to the Port Allen police department for investigation. Detective Eric Frank was assigned the investigation. He went to the bank, where he met with Mr. Daigle and other involved employees and reviewed the bank’s procedures. Based upon his investigation, Detective Frank determined that probable cause existed for plaintiffs arrest. On July 11, 2005, he met with plaintiff at her home and arrested her. Upon being placed under arrest, plaintiff reportedly advised Detective Frank that “bank policies had been broken and would ‘come to light’ during a trial.” On August 31, 2005, plaintiff was charged with felony theft.
Plaintiff filed suit on June 10, 2006, naming the bank and Mr. Daigle as defendants. She alleged that she was arrested because Mr. Daigle advised law enforcement officers that she stole $5,000.00 from the bank, despite the fact that no internal audit had been conducted and the absence of any witnesses to the theft. She further claimed that Mr. Daigle terminated her employment based upon the alleged theft and that the bank pursued her criminal prosecution for the charge of *30 felony theft. Plaintiff sought general | (,and special damages based upon “[djefa-mation of character, libel and slander,” “[ijntentional infliction of mental anguish and emotional distress,” “negligent misrepresentation and/or presentation of false information to law enforcement agents,” and other alleged wrongs committed by defendants.
On July 5, 2006, defendants filed their joint answer to plaintiffs petition, generally denying its allegations and their liability. They further affirmatively alleged that any statements made on their behalf concerning plaintiff were subject to a conditional or qualified privilege and that any such statements were true. Defendants also pleaded plaintiffs contributory negligence and fault in failing to follow the proper procedures for handling money.
On August 15, 2008, defendants filed a combined motion for summary judgment and peremptory exception of no cause of action, seeking the dismissal of plaintiffs claims. Attached as exhibits to the motion were the depositions of Mr. Daigle and other bank employees, the deposition of Detective Frank, excerpts from the' deposition of plaintiff, and the affidavit of Mr. Sparks.
Defendants’ motion and exception were originally fixed for hearing on October 15, 2008, but the hearing was continued to November 12, 2008. In opposition to the motion and exception, plaintiff filed her own affidavit on October 24, 2008. On the scheduled hearing date, the trial court heard the motion and exception and took them under advisement for decision. For reasons not apparent from the record, the motion and exception were again heard and argument by counsel presented on February 11, 2009. The trial court thereupon took the matter under advisement again for decision.
On August 25, 2009, the trial court rendered and signed its judgment, granting the motion for summary judgment in favor of the bank. On August |728, 2009, defendants filed a motion to amend the summary judgment to reflect that the motion was also granted in Mr. Daigle’s favor. On September 18, 2009, the trial court signed an order amending the summary judgment as requested. After plaintiff instituted this appeal, we issued a Rule to Show Cause Order to the parties, emphasizing that the judgment as amended lacked appropriate decretal language dismissing plaintiffs claims and therefore did not constitute a final appealable judgment. On defendants’ motion, the trial court signed another amended judgment on March 1, 2010, adding the necessary de-cretal language.
Plaintiff now appeals, contending that the trial court “abused its discretion” and committed an error of law in granting summary judgment and dismissing her petition and cause of action.
DISCUSSION

Summary Judgment

Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp., 07-2206, p. 5 (La.App. 1st Cir.6/6708), 992 So.2d 527, 580, writ denied, 08-1478 (La.10/3/08), 992 So.2d 1018. The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the *31 mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The mover has the burden of proof that he is entitled to summary judgment. See La. C.C.P. art 966(CX2). If the mover will not bear the |8burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. La. C.C.P. art. 966(CX2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B).
Because of their chilling effect on the exercise of freedom of speech, defamation actions have been found particularly susceptible to summary judgment Kennedy v. Sheriff of E. Baton Rouge, 05-1418, p. 25 (La.7/10/06), 935 So.2d 669, 686. Summary judgment, being favored in the law, is a useful procedural tool and an effective screening device to eliminate un meritorious defamation actions that threaten the exercise of First Amendment rights. Id.

The Evidence

Our prior summary of the factual background is derived from the depositions of Mr. Daigle, Ms. Smith, Ms. Canezaro, Detective Frank, and plaintiff filed in the record by defendants, in addition to the pleadings. The evidence in the record also includes the following.
Detective Frank testified in his deposition that he made the decision to arrest plaintiff for the theft of the missing $5,000.00, based upon the totality of the evidence discovered during his investigation, including plaintiffs own statements to him. According to Detective Frank, plaintiff confirmed that |ashe personally packaged the original $72,000.00 shipment, received the shipment upon its return, and repackaged the currency contained in the new bags found in her coin vault, including the sealed bag missing $5,000.00. Her statements and those of the other employees interviewed indicated that she had the exclusive custody of the returned shipment from the time of its return until the loss was discovered by Ms. Smith and Mr. Dai-gle. He confirmed that no one from the bank ever stated that plaintiff stole the missing funds, nor did they express any opinion or suggestion that she was a suspect, and that his belief that she was the likely suspect was based upon the facts revealed in his own investigation and his own conclusions based upon those facts.[2]
In his affidavit, Mr. Sparks identified himself as the chief administrative officer of the bank since 2005. He confirmed that the bank had an unwritten internal policy requiring that any significant, unexplained *32 loss or “outage” of approximately $1,500.00 or more be referred for police investigation after the bank had conducted its own internal investigation. In line with that policy, he directed another bank employee to contact the Port Allen police department. Mr. Sparks attested that he spoke with Detective Frank and stated “that he was not asking that charges be pressed against anyone.” Mr. Sparks also attested that after Detective Frank’s own investigation was complete, he told Mr. Sparks that he suspected plaintiff had taken the missing funds and would be charged, and that he then advised Detective Frank that neither he nor the bank nor other employees were asking or suggesting that such action be taken. Mr. Sparks confirmed that |inthe missing $5,000.00 was never located. Finally, he affirmed that he made the decision to terminate plaintiffs employment for violation of the bank’s written outage policy relating to outages of $400.00 or more and the teller drawer maximum cash limit policy, and that such discipline was appropriate for conduct resulting in a $5,000.00 loss.
In her affidavit, plaintiff recounted her version of various events leading up to her termination. Although differing in minor details from the versions of events set forth in the other employees’ depositions, her account accorded with them in most relevant respects. Plaintiff confirmed that she was terminated by Mr. Sparks (not Mr. Daigle) for violation of the bank’s written outage and teller drawer maximum cash limit policies. However, she denied in her affidavit that she stole or misplaced $5,000.00 from the bank and further denied violating the bank’s written policies. Finally, she claimed in her affidavit that Detective Frank told her on the date she was arrested that Mr. Daigle had stated that she must have taken the missing money since it could not be found and had been in her possession.

Defamation and “Negligent Misrepresentation ”

The centerpiece of plaintiffs claims is her claim that defendants defamed her. Plaintiff also alleges that defendants are liable to her by reason of their “[n]egligent misrepresentation and/or presentation of false information to law enforcement agents.” Strictly speaking, the tort theory of negligent misrepresentation is founded upon the following requisite elements: (1) a legal duty on the defendant’s part to supply correct information to the plaintiff, (2) a breach of that duty; and (3) damages to the plaintiff as a result of his justifiable reliance upon the misrepresentation. Busby v. Parish Nat’l Bank, 464 So.2d 374, 377 (La.App. 1st Cir.), writ denied, 467 So.2d 1132 (La.1985). (Emphasis added.) An action properly [n characterized as being based upon “negligent representation” is thus more akin to one based upon detrimental reliance. Plaintiffs claim therefore does not represent a true claim for negligent representation, which would require that the false or incorrect representation be made to her and that she justifiably rely upon it, suffering damages thereby.
To the extent that plaintiff may have properly asserted a claim based upon defendants’ alleged “negligent misrepresentation,” the elements of that claim would logically be subsumed within those of her related defamation claim, as both are based upon the identical communications supposedly made by defendants and the same operative facts. Accordingly, the following discussion is pertinent to both the defamation and “negligent misrepresentation” claims.
Words that convey an element of personal disgrace, dishonesty, or disrepute are defamatory. Costello v. Hardy, 03-1146, p. 13 (La.1/21/04), 864 So.2d 129, 140. The question of whether the words convey *33 a particular meaning that is defamatory is ultimately a legal question. Id. Four elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Kennedy, 05-1418 at p. 4, 935 So.2d at 674. (Emphasis added.) The element of fault is generally referred to in the jurisprudence as malice, actual or implied. Costello, 03-1146 at p. 12, 864 So.2d at 139. If even one of those elements is found lacking, the cause of action fails. Kennedy, 05-1418 at p. 16, 935 So.2d at 681.
In Louisiana, defamatory words have been classified as either words that are defamatory per se or words susceptible of a defamatory meaning. Costello, 03-1146 at p. 13, 864 So.2d at 140. Words that expressly or h ¿implicitly accuse another of criminal conduct, or that by their very nature tend to injure one’s personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. Id., 03-1146 at pp. 13-14, 864 So.2d at 140. When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant Id., 03-1146 at p. 14, 864 So.2d at 140. When the words are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault), and injury. Id.
In Louisiana, privilege relating to a communication is a defense to a defamation action. Kennedy, 05-1418 at p. 16, 935 So.2d at 681. Conditional privilege is an affirmative defense to a cause of action for defamation that must be affirmatively or specially pleaded in a defendant’s answer. See Costello, 03-1146 at p. 16 n. 13, 864 So.2d at 142 n. 13, and La. C.C.P. art. 1005. The defense is founded upon the principle that as a matter of public policy, in order to encourage the free communication of views in certain defined instances, a person is sometimes justified in communicating defamatory information to others without incurring liability. Kennedy, 05-1418 at p. 16, 935 So.2d at 681, citing Toomer v. Breaux, 146 So.2d 723, 725 (La.App. 3rd Cir.1962).
Privileged communications may be either. (1) absolute (such as statements by judges in judicial proceedings or legislators in legislative proceedings) or (2) conditional, or qualified. Kennedy, 05-1418 at p. 16, 935 So.2d at 681. The basic elements of a conditional privilege are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in scope, to that interest; (4) a proper occasion for the communication of the statement; and 11S(5) publication in a proper manner and to proper parties only. Id., 05-1418 at p. 17, 93S So.2d at 682, citing Madison v. Bolton, 234 La. 997, 1013 n. 7, 102 So.2d 433, 439 n. 7 (La.1958).
The analysis of whether a conditional privilege exists is a two-step process. Kennedy, 05-1418 at pp. 17-18, 935 So.2d at 682. First, it must be determined as a matter of law whether the circumstances in which a communication was made satisfy the legal requirements for invoking the conditional privilege. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512, p. 18 (La.7/5/94), 639 So.2d 730, 745. The second step requires a determination of whether the privilege was abused, which requires a factual determination that malice or lack of good faith existed. Id.
A good faith report to law enforcement officers of suspected criminal activity may appropriately be characterized as speech on a matter of public con *34 cern. See Kennedy, 05-1418 at p. 9, 935 So.2d at 677. Louisiana courts have recognized that the public has an interest in possible criminal activity being brought to the attention of the proper authorities, and have extended a conditional privilege to reports made in good faith. Id., 05-1418 at p. 19, 935 So.2d at 683. The conditional privilege is abused if the publisher (a) knows the matter to be false; or (b) acts in reckless disregard as to its truth or falsity. Id., 05-1418 at p. 22, 935 So.2d at 684.
In a case involving a private individual allegedly injured by a defamatory statement in a matter of public concern, the applicable standard of fault, or malice, is the following:
One who publishes a false and defamatory communication concerning a private person ... is subject to liability, if, but only if, he
(a) knows that the statement is false and that it defames the other,
114(b) acts in reckless disregard of these matters, or
(c) acts negligently in failing to ascertain them.
Kennedy, 05-1418 at p. 15, 935 So.2d at 681, citing Restatement (Second) of Torts § 580B.
To establish reckless disregard of the truth, a plaintiff must prove that the publication was deliberately falsified, published despite the defendant’s awareness of probable falsity, or the defendant in fact entertained serious doubts as to the truth of his publication. Kennedy, 05-1418 at pp. 28-9, 935 So.2d at 688. Even proof of gross negligence in the publication of a false statement is insufficient to prove reckless disregard under this standard. Id., 05-1418 at p. 29, 935 So.2d at 688. Mere negligence in determining the falsity of a statement (or lack of reasonable grounds for believing it to be true) is insufficient to prove abuse of the conditional privilege for communication of alleged wrongful acts to an official authorized to protect the public from such acts. Id., 05-1418 at p. 22, 935 So.2d at 684.
Plaintiff contends that there is genuine factual dispute as to whether the unwritten internal policy for reporting significant unexplained outages to law enforcement authorities actually existed and whether she violated either the written outage policy or the teller drawer maximum cash limit policy, and that such dispute precludes summary judgment. We disagree. A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Smith, 93-2512 at p. 27, 639 So.2d at 751. While the foregoing factual circumstances might conceivably be considered material for other purposes, such as a claim for improper discharge, they are only peripherally related to the issues presented in the context of this action. The existence of the unwritten internal policy has no real relevance to the issue of whether plaintiff was defamed or | ^otherwise damaged by the bank’s reporting of the loss to the police. And any factual dispute regarding plaintiffs violation of the bank’s operating policies has no bearing on the determination of the essential elements of her claim for defamation for allegedly being accused of theft.
Most of the remaining factual issues that plaintiff contends are genuinely disputed also relate to her violation of the bank’s policies and her custody and responsibility for the returned currency, issues that relate to her conduct rather than to the alleged conduct of defendants that forms the basis of her action. Plaintiffs actual guilt for theft or violation of her employer’s policies is not at issue for purposes of determining if summary judgment was appropriate; what is at issue here is defen *35 dants’ liability to plaintiff under the theories of recovery alleged, including their essential elements.
More importantly, however, plaintiff also insists that there remains genuine issue as to the material fact of whether any bank employee explicitly or implicitly stated that she stole the missing funds. Again, we disagree. Plaintiff points to only one single communication from Mr. Daigle that could arguably be considered a defamatory accusation of criminal conduct, that being a purported statement made to her by Detective Frank that Mr. Daigle told him “that plaintiff must have taken the money since it could not be found, and it was in plaintiffs possession at all times.” Detective Frank’s purported statement to that effect, offered to prove the truth of its contents, was set form only in plaintiffs own affidavit. Unfortunately for plaintiff, the described statement by Detective Frank reported in her affidavit is hearsay and is not admissible in evidence. See La. C.E. arts. 801(C) and 802. Louisiana Code of Civil Procedure article 967(A) provides that “[supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in 11Sevidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” (Emphasis added.) Thus, the hearsay statement may not be considered for purposes of summary judgment.
Significantly, plaintiffs primary argument is that in their written statements provided to Detective Frank, Mr. Daigle, Ms. Smith, and Ms. Canezaro “[s]nidely ... implicated thievery to the plaintiff, without coming right out and saying so.” Those purported implicit accusations of theft are unidentified, and, based upon our review of the record, unproven. The employees* statements are narrative accounts of the relevant circumstances and conversations among the involved bank employees, including plaintiff, following the return of the currency sent to the Federal Reserve Bank and the discovery of the missing funds; there are no criminal accusations or suggestions of guilt, expressions of opinion, or references to “stolen” money or “theft.” Even if Mr. Daigle or another bank representative would have expressly described plaintiff as a possible suspect in the loss and characterized the loss as a theft, and even if it is assumed that such a statement would have been defamatory per se (and also procedurally admissible), the statement would clearly have been privileged under the circumstances. See Jalou II, Inc. v. Liner, 10-0048, p. 12 (La.App. 1st Cir.6/16/10), 43 So.3d 1023.
The depositions and affidavits filed on behalf of defendants affirmatively refuted plaintiffs allegations of defamatory accusations by other bank employees. Plaintiff presented only her own affidavit in opposition to the defendants’ evidence. In her deposition, filed by defendants, plaintiff admitted that she had no personal knowledge of the content of any communication from Mr. Daigle or any employee, agent, or other representative of the bank to Detective Frank concerning her or the |17missing money. Thus, her own sworn deposition testimony served to negate any personal knowledge on her part of any such communication in her affidavit. Plaintiff having failed to establish a genuine issue of material fact relating to any communication of a non-privileged defamatory statement or any malice on the part of defendants, her cause of action for defamation must fail. Summary judgment was appropriate as to her defamation claim and, to the extent it might constitute a distinct claim, her claim for negligent misrepresentation.

*36
Intentional Inñiction of Emotional Distress, False Imprisonment, and Malicious Prosecution

A plaintiff seeking damages for intentional infliction of emotional distress must establish three elements: (1) that the defendant’s conduct was extreme and outrageous; (2) that the emotional distress suffered was severe; and (3) mat the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. Cortes v. Lynch, 02-1498, p. 9 (La.App. 1st Cir.5/9/03), 846 So.2d 945, 951, citing White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991). The required conduct under the first element “must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.” White, 585 So.2d at 1209.
The same legal considerations that justify the defense of conditional privilege for reports of suspected criminal activity also compel the conclusion that such a report, made in good faith and founded upon reasonable suspicions, simply cannot constitute “extreme and outrageous” conduct under the foregoing standard. See, e.g., Taylor v. Johnson, 00-1660, pp. 4-5 (La.App. 3rd Cir.4/18/01), 796 So.2d 11, 14, writ denied, 01-1486 (La.8/31/01), 795 So.2d 1212. Liability for intentional infliction of emotional distress does not attach where the defendant has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional stress. White, 585 So.2d at 1210. Similarly, liability cannot be based upon a privileged communication on a matter of public concern, a good faith report of a suspected or possible criminal act, as such reports should be encouraged as promoting the public interest in the suppression of crime and enforcement of the law.
Our de novo review of the record confirms that plaintiff utterly failed to meet her burden to establish any genuine issue of material fact tending to support a finding of extreme and outrageous conduct under the first element of the tort of intentional infliction of emotional distress. That claim was thus appropriately dismissed.
As previously noted, plaintiff alleged in her petition that she was arrested and charged with felony theft because of supposed statements provided to law enforcement by Mr. Daigle that she stole $5,000.00, and that the accusation was false. In the prayer of her petition, plaintiff claimed that she is entitled to damages by reason of defendants’ actions in “causing her false arrest and imprisonment.”
Our de novo review of the i-ec-ord demonstrates that plaintiff has failed to establish any genuine factual issue supporting a claim for false arrest and imprisonment against defendants. The tort of false arrest or false imprisonment occurs when one arrests and restrains another against his will and without statutory authority. Kennedy, 05-1418 at p. 32, 935 So.2d at 690. There are two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention. Id. It is undisputed that plaintiff was 119never actually or constructively detained or restricted in her movements by defendants, and that she was not arrested on the bank premises. It is likewise clear from Detective Frank’s deposition that the decision to arrest plaintiff was his alone, and that neither Mr. Daigle nor any other bank representative requested, suggested, or otherwise “caused” her arrest. Summary judgment was appropriately rendered as to this claim as well. See Kennedy, 05- *37 1418 at p. 32, 935 So.2d at 689-90; Taylor, 00-1660 at pp. 4-5, 796 So.2d at 13-14; and Mitchell v. Villien, 08-1470, pp. 21-3 (La.App. 4th Cir.8/26/09), 19 So.3d 557, 572-73, writ denied, 09-2111 (La.12/11/09), 23 So.3d 923.
Plaintiffs petition assert’s a claim for malicious prosecution, although that particular theory of recovery was never specifically identified by plaintiff as such. She alleged that she “was arrested and charged with [flelony [t]heft primarily because of statements made and information given to law enforcement authorities by [Mr.] Daigle.” She also alleged that the bank “has pursued criminal proceedings against [her] which has [sic ] required her to retain a criminal defense attorney.”
Malicious prosecution actions have never been favored in our law, and the plaintiff in such an action must clearly establish that the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent Johnson v. Pearce, 313 So.2d 812, 816 (La.1975). An action for malicious prosecution of a criminal proceeding, such as that asserted by plaintiff here, requires the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against the plaintiff, who was the defendant in the criminal proceeding; (3) the bona fide termination of the criminal proceeding in favor of the present plaintiff; (4) the absence of |enprobabIe cause for the criminal proceeding; (5) malice; and (6) damage to the plaintiff, conforming to legal standards. Miller v. E. Baton Rouge Parish Sheriff's Dep’t, 511 So.2d 446, 452 (La.1987).
In a malicious prosecution action, there must be malice in fact. Id, 511 So.2d at 453. Malice may be inferred from lack of probable cause or a finding of reckless disregard for the other person’s rights. Id. Our prior observations as to the absence of malice in discussing plaintiffs defamation claim are relevant here. In light of the undisputed facts in the record, defendants adequately rebutted plaintiffs conclusory allegations of malice, and plaintiff failed to affirmatively put forth competent evidence on that element of her malicious prosecution claim sufficient to defeat summary judgment.
■ Plaintiff has further failed to show . that she can likely prevail as to the issue of causation for any claim of malicious prosecution. Here, the bank employees merely. reported the substantial monetary loss to the police in accordance with the bank’s internal policy requiring such a report, and the police department thereupon conducted its own independent investigation. In light of the uncontroverted deposition testimony of Detective Frank and Mr. Daigle and the sworn statements in Mr. Sparks’s affidavit, “any chain of causation regarding plaintiffs subsequent detention was broken,” because “[t]he decision to detain plaintiff was made by the independent actions and investigation” of Detective Frank. See Kennedy, 05-1418 at p. 32 n. 20, 935 So.2d at 690 n. 20. See also Mitchell, 08-1470 at pp. 21-3, 19 So.3d at 572-73, and Adams v. Harrah’s Bossier City Inv. Co., LLC, 41,468, pp. 5-6 (La.App. 2nd Cir.1/10/07), 948 So.2d 317, 320, writ denied, 07-0639 (La.5/11/07), 955 So.2d 1281. Summary judgment was clearly appropriate as to 121 any malicious prosecution claim as well as the defamation and related claims. See Jalou II, 10-0048 at pp. 26-7, 43 So.3d at 1026.[3]
*38 CONCLUSION
In summary, defendants met their initial burden of establishing absence of factual support for essential elements of all of plaintiffs various claims, thereby shifting the burden to plaintiff to show that summary judgment was inappropriate. Plaintiff failed to put forth factual support sufficient to establish that she could probably meet her burden of proof at trial on essential elements of her claims of defamation, intentional infliction of emotional distress, and negligent misrepresentation, as well as those for any claims for false arrest and malicious prosecution. Based upon our de novo review of the record, it is our conclusion that the trial court did not err in rendering summary judgment in favor of defendants.
DECREE
The summary judgment in favor of the defendants-appellees, American Gateway Bank and Glen Daigle, dismissing the cause of action of the plaintiff-appellant, Jacquéline Cook, is hereby affirmed. All costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.
WELCH, J. concurs without reasons.

. Including the half-"brick” in the total, plaintiff’s teller drawer should have held a surplus of $5,000.00 above its recorded balance. If the $5,000.00 half-"brick” in fact came from the returned $72,000.00 shipment, then plaintiff's teller drawer was short $5,000.00 before the half-"brick” was placed in it.

. Detective Frank also testified that he had personally investigated a prior incident at the same branch bank involving another loss of $5,000.00. Plaintiff was also involved in that incident, in which the sum was discovered to be missing from a transfer of funds from plaintiff to another bank employee. According to Detective Frank, no arrests were made in connection with that loss, because the transferred funds had not been kept secure from access by other employees besides plaintiff and the recipient after the transfer was made.

. Additionally, we note that there is no evidence in the record showing that títere was a bona fide termination of the criminal proceeding in plaintiff's favor. In her appellate brief, *38 plaintiff asserts that the proceeding against her has not yet been set for trial.