CRAIN, J.
*474 Joshua Shane Barber appeals a summary judgment dismissing his defamation suit against his former employer, Willis Communications, Inc. We affirm.
FACTS
Barber instituted this defamation action against Willis, alleging he suffered injuries when Willis, his former employer, accused him of theft in statements published to the local police department, his former co-workers, the Louisiana Workforce Commission (LWC), and others. Barber further alleges the statements were made with a reckless disregard for the truth and without a reasonable basis for believing them to be true. Barber's petition specifically references statements in a separation notice provided to him by Willis and forwarded to the LWC, which stated Barber "was witnessed crumpling up money from his drawer and putting it in his pocket." The notice continued, "Upon inspection the following morning, there was money missing."
The trial court granted Willis' motion for summary judgment, finding no evidence of any unprivileged communication published to a third party, and dismissed Barber's suit. Barber appeals.
DISCUSSION
Appellate courts review summary judgments de novo using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Kennedy v. Sheriff of East Baton Rouge , 05-1418 (La. 7/10/06), 935 So.2d 669, 686. That is, a motion for summary judgment shall be granted if, after an opportunity for discovery, the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966A(3).
The burden of proof rests with the mover. La. Code Civ. Pro. art. 966D(1). If the mover will bear the burden of proof at trial on the issue before the court in the motion, the burden of showing there is no genuine issue of material fact remains with the mover. See La. Code Civ. Pro. art. 966D(1); Sims v. Maison Insurance Company , 16-1661 (La App. 1 Cir. 9/15/17), 231 So.3d 656, ---- (2017WL4081531). After the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. Jones v. Estate of Santiago , 03-1424 (La. 4/14/04), 870 So.2d 1002, 1006. However, if the mover will not bear the burden of proof at trial, the mover need not negate all essential elements of the adverse party's claim but must point out that there is an absence of factual support for one or more elements essential to the claim. La. Code Civ. Pro. art. 966D(1). Thereafter, the burden shifts to the non-moving party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.[1]
*475 La. Code Civ. Pro. art. 966D(2). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. Bryant v. Premium Food Concepts, Inc., 16-0770 (La. App. 1 Cir. 4/26/17), 220 So.3d 79, 82, writ denied, 17-0873 (La. 9/29/17), 227 So.3d 288.
Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. Costello v. Hardy , 03-1146 (La. 1/21/04), 864 So.2d 129, 139. The essential elements required to prevail on a defamation claim are (1) defamatory words, (2) publication, (3) falsity, (4) malice, and (5) resulting injury. Starr v. Boudreaux , 07-0652 (La. App. 1 Cir. 12/21/07), 978 So.2d 384, 389. Defamation actions raise issues related to the constitutionally protected rights of free speech and freedom of the press, and summary adjudication is recognized as a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious defamation actions that threaten those rights. See Kennedy, 935 So.2d at 686.
In its motion for summary judgment, Willis asserts that Barber can point to no evidence that Willis published defamatory statements about him. The evidence submitted on the motion for summary judgment established that on the morning Barber's employment was terminated, a manager met Barber in the parking lot and handed him the termination notice, which accused him of theft. In his deposition, Barber testified that no one else was present or overheard the conversation between them. Barber further testified that he had no knowledge of the Willis employee who signed the termination notice relaying information regarding the alleged theft to anyone else, including other employees or the police. Barber also indicated that he was not contacted by the police about the alleged theft after his termination. However, Barber contends that Willis published defamatory statements to the LWC when it forwarded them the notice of termination accusing him of theft and is also responsible for its employee's republication of defamatory statements in a Facebook message to his wife.
When questioned about Willis' communication to the LWC, Barber testified that the LWC approved his claim for unemployment benefits, and that he received benefits for approximately one month until he began working elsewhere. Nonetheless, Barber claims that the accusation of theft in the termination notice that Willis transmitted to the LWC constitutes defamation per se. Words that expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. Kennedy, 935 So.2d at 675. When a plaintiff proves publication of words that are defamatory per se, falsity and malice, and sometimes injury, are presumed but may be rebutted by the defendant. See *476 Kennedy, 935 So.2d at 675. In its motion for summary judgment, Willis asserted that the statement transmitted to the LWC could not be considered "published" because the communication was privileged.
For purposes of maintaining a defamation action, communication to a third party is considered a publication if the communication is not subject to a privilege. See Costello, 864 So.2d at 142 ; Conner v. Taylor , 15-0177, 2015 WL 5515608, p.4 (La. App. 1 Cir. 9/18/15). Privilege is a defense to a defamation action. Cook v. American Gateway Bank, 10-0295 (La. App. 1 Cir. 9/10/10), 49 So.3d 23, 33. The defense is based on the principle that as a matter of public policy, in order to encourage free communication in certain defined circumstances, a person is sometimes justified in communicating defamatory information to others without incurring liability. Kennedy, 935 So.2d at 681 ; Cook , 49 So.3d at 33.
Privileged communications may be either absolute (such a statements by judges in judicial proceedings or legislators in legislative proceedings) or "conditional or qualified." Kennedy , 935 So.2d at 681. A conditional or qualified privilege is one of the methods utilized for balancing the interest of the defamed person in the protection of his or her reputation against the interests of the publisher, of third persons, and of the public in having the publications take place. Kennedy , 935 So.2d at 685. The basic elements of a conditional or qualified privilege are good faith, an interest to be upheld, a statement limited in scope to that interest, a proper occasion for the communication of the statement, and publication in a proper manner to only the proper parties. Kennedy , 935 So.2d at 681. The analysis of whether a communication is protected by a conditional privilege requires (1) a determination as a matter of law whether the circumstances in which the communication was made satisfy the legal requirements for invoking the privilege, and (2) a determination of whether the privilege was abused, which requires a factual determination that malice or lack of good faith existed. Cook , 49 So.3d at 33.
Another Louisiana court recently held that communications by employers to the LWC are protected by a conditional or qualified privilege as a statement to a state agency with a legitimate interest in the subject matter (determining whether the employee should receive unemployment benefits) and relevant to the subject matter of the agency's inquiry regarding the employee's claim for benefits. See Fisher v. ASI Federal Credit Union , 17-292 (La. App. 5 Cir. 6/29/17), 223 So.3d 779, 784. This is because:
[t]he public's interest and social necessity mandate that an employer not be unreasonably restricted when required to provide information for a state agency to determine in a quasi-judicial proceeding whether a terminated employee should receive unemployment benefits. The employer must be free to make a complete and unrestricted communication without fear of liability in a defamation suit even if the communication is shown to be inaccurate, subject to the requisites that the communication is in good faith, is relevant to the subject matter of the inquiry and is made to a person (or agency) with a corresponding legitimate interest in the subject matter.
Fisher , 223 So.3d at 783-84 (quoting Nolan v. Jefferson Par. Hosp. Serv. Dist. No. 2 , 11-291 (La. App. 5 Cir. 3/13/12), 90 So.3d 1178, 1182 ). We agree with this analysis and that the basic elements of a conditional or qualified privilege are satisfied by Willis' transmission of the termination notice to the LWC.
*477 In a defamation case, the practical effect of the assertion of the conditional or qualified privilege is to rebut the plaintiff's allegations of malice or fault, and to place the burden of proof on the plaintiff to establish abuse of the privilege. Kennedy , 935 So.2d at 683. It is then incumbent on the plaintiff to come forward with evidence establishing the defendant abused the privilege by making the statement with knowledge of falsity or reckless disregard for the truth. Kennedy , 935 So.2d at 686. To establish reckless disregard for the truth, the plaintiff must prove that the statement was deliberately falsified, published despite the defendant's awareness of probable falsity, or the defendant in fact entertained serious doubts as to the truth of the statement. Cook , 49 So.3d at 34 ; see also Kennedy , 935 So.2d at 688. Even proof of gross negligence in the publication of a false statement is insufficient to prove reckless disregard under this standard. Kennedy , 935 So.2d at 688. Rather, the plaintiff is required to produce evidence that the defendant was highly aware the statements were probably false. Kennedy , 935 So.2d at 688.
In opposition to Willis' motion for summary judgment, Barber presented evidence establishing that Willis based its theft accusation on the eyewitness account of another employee, Kasey Horning, as well as video evidence. In her affidavit, Horning attested that she witnessed Barber take money out of the cash register and put it in his pocket, and that she reported this to one of her managers. Barber argues, however, that Willis has no proof to substantiate the charge, other than statements by Horning, "who clearly has an axe to grind with the plaintiff." Barber suggests that his point is proven by Willis' refusal to allow him to depose Horning. Barber also argues there is no evidence to support Willis' statement in his termination notice that money was found to be missing.
The summary judgment evidence establishes that Willis terminated Barber following an eyewitness account by an employee that Barber pocketed money from the cash register. Barber's unsubstantiated arguments attacking Horning's credibility do not constitute evidence that Willis was highly aware that the statement that Barber committed theft, which it transmitted to the LWC as the basis for his termination, was probably false. Similarly, Barber's arguments regarding his inability to depose Horning and that Willis failed to establish proof of its statement that money was missing falls short of carrying his burden of proof.
Barber also asserts that Willis is responsible for Horning's publication of defamatory statements to Barber's wife in a Facebook message. In the message, Horning threatens to post a video of Barber stealing money on Facebook "for God and everybody to see." Barber maintains that this statement "implies that criminal conduct has been caught on camera and that it will be broadcast to the world," which amounts to republication of the original accusation of theft. Barber argues that Willis is liable for republication of the defamatory statement where the republication is the natural and probable consequence of Willis' act, citing Wiggins v. Creary , 475 So.2d 780 (La. App. 1 Cir. 1985).
Wiggins is factually distinguishable and inapplicable to the instant case. In Wiggins , this court held that a newspaper's republication of a defamatory statement was a natural and probable consequence of the defendant's defamatory statement to a reporter, rendering the defendant liable for the republication. Here, however, there is no proof of defamatory statement being republished by a third party. If, in fact, *478 Horning's message included a defamatory statement, it was simply another account by her that she saw Barber take money from the cash register. Following the analysis in Wiggins , Willis would be liable for Horning's statement only if she republished a defamatory statement by Willis and her republication was a natural and probable consequence of Willis' act. However, rather than showing that Horning republished a statement by Willis, the evidence shows that Horning merely repeated her own accusation against Barber. Barber has submitted no argument or evidence to substantiate its claim that Willis is liable for the publication of any defamatory statements in the message from Horning that would defeat Willis' motion for summary judgment.
Willis established Barber's inability to prove that it published defamatory statements about Barber that were not protected by a privilege. Barber then failed to carry his burden of proving he will be able to establish the existence of a genuine issue of material fact or that Willis is not entitled to judgment as a matter of law. Willis is entitled to summary judgment dismissing Barber's defamation claims against it.
CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to Joshua Shane Barber.
AFFIRMED.

In its appellate brief, Willis asserts that because this is a defamation case, in opposing the motion for summary judgment Barber bears the more onerous burden of showing that he can produce sufficient evidence at trial to prove the elements of his case with convincing clarity. See Ruffin v. Wal-Mart Stores, Inc. , 01-0613 (La. App. 1 Cir. 5/10/02), 818 So.2d 965, 967, writ denied, 02-1636 (La. 9/30/02), 825 So.2d 1200. However, the 1996 amendments to the summary judgment law eliminated the need for courts to impose a different summary judgment standard in defamation cases. See Kennedy , 935 So.2d at 686 n.17. Thus, a defamation plaintiff is no longer required to produce evidence of sufficient quality and quantity to demonstrate that he will likely be able to meet his burden of proof at trial with convincing clarity in order to survive a motion for summary judgment. Brown v. Times-Picayune, L.L.C. , 14-0160 (La. App. 1 Cir. 11/3/14), 167 So.3d 665, 668 n.4.